UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RONALD SCHILLING,

                    Plaintiff,

            v.                                          Case No. 25-cv-1722-pp

DR. WILLIAM KELLEY, *et al.*,

                    Defendant.

---

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S REQUESTS TO APPOINT COUNSEL (DKT. NO. 70, 81) AND GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME (DKT. NO. 77)**

---

## I.     Procedural History

Plaintiff Ronald Schilling, who was incarcerated at Kettle Moraine Correctional Institution when he filed the complaint and is representing himself, filed this civil rights case in the United States District Court for the Western District of Wisconsin; in that complaint, he named several "Doe" defendants. Dkt. No. 1. Along with the complaint, the plaintiff filed twenty exhibits—medical documents, letters and other documents. Dkt. Nos. 1-1 through 1-20. He also filed a motion asking the court to appoint counsel to represent him, dkt. no. 2, along with a brief, dkt. no. 3, and a supporting affidavit, dkt. no. 4. Judge William Conley dismissed that complaint but allowed the plaintiff to amend. Dkt. No. 19. The plaintiff filed an amended complaint on August 19, 2024, again naming several "Doe" defendants; at that time, he remained incarcerated at Kettle Moraine. Dkt. No. 20.

1

After amending his complaint, the plaintiff filed a request to renew his motion for assistance in recruiting counsel, dkt. no. 21, a renewed motion for assistance in recruiting counsel, dkt. no. 22, a brief, dkt. no. 23, an affidavit, dkt. no. 24, and a declaration, dkt. no. 25. Judge Conley screened the amended complaint and allowed the plaintiff to proceed on claims that that the defendants were deliberately indifference to his serious medical needs in violation of the Eighth Amendment.[1] Dkt. No. 27. In his order, Judge Conley said that he would not issue summonses for the Doe defendants "until the plaintiff learns the identities of these defendants and amends his complaint accordingly." Id. at 8. Judge Conley also addressed the plaintiff's various requests for appointment of counsel, or assistance in recruiting counsel. He explained:

> This court would find a volunteer attorney for every *pro se* litigant if enough lawyers were available to do this, but the court receives over 200 new *pro se* lawsuits every calendar year, and only 15 to 20 attorneys are willing to take such cases, and they do not take one every year. So, the court is forced to marshal this scarce resource. With that context in mind, the court will deny plaintiff's motion because he has not shown that the legal and factual difficulties of this case exceed his abilities. *See Pruitt v. Mote*, 503 F.3d 647, 654-

---

[1] Judge Conley allowed the plaintiff to proceed on claims against the following defendants: (1) Dr. Kelley and HSU Manager McCreedy for allegedly deliberately failing to ensure that the plaintiff returned to Agnesian for his follow-up appointment; (2) Kelley, Dr. Carberry and Nurse Weis for allegedly fabricating evidence to cover up the plaintiff's missed follow-up appointments; (3) CO Vander Waal and CO Schroeder for allegedly ignoring the plaintiff's request to go to the HSU after they saw him struggling to walk; (4) "DOC Hispanic John Doe" for allegedly preventing the plaintiff from sleeping and taking away his coughing pillow while he was recovering from surgery; and (5) Doe Dodge Corrections Officers for allegedly confiscating the plaintiff's pain medication when he arrived at Dodge. Dkt. No. 27 at 5-6. On March 5, 2026, this court dismissed the Doe defendants, thereby dismissing the plaintiff's fourth and fifth claims. Dkt. No. 63.

2

55 (7th Cir. 2007). Although the court acknowledges plaintiff's assertion that he has cognitive issues, this case has only just been screened, so it is far too soon to tell whether it will present issues too complex for plaintiff to litigate himself. To this point, plaintiff's filings have been well-written and clear (although the court acknowledges his assertion that he has received "assistance of periodic jailhouse lawyers"). Regardless, the court will soon schedule a telephonic preliminary pretrial conference with the parties where the magistrate judge will set the case schedule and explain to the parties how they can gather relevant information and evidence. Moreover, the denial of this motion will be without prejudice to plaintiff's ability to renew it later in this lawsuit, provided he makes a more specific showing about why he needs an attorney to litigate this case.

Id. at 6-7

Meanwhile, on February 12, 2025, the Western District court received notice from the plaintiff that he had been transferred to Oakhill Correctional Institution. Dkt. No. 26. About nine months later, on November 5, 2025, the case was transferred to this Eastern District of Wisconsin district court. Dkt. No. 51.

On November 20, 2025, this court (as it does in every civil case) issued a scheduling order. Dkt. No. 55. That order did several things. It advised the plaintiff that he needed to identify the John/Jane Doe defendants by January 13, 2026 or the court would dismiss them. Id. at 2. It explained to the plaintiff that he "must use discovery to identify the proper names of these defendants," and it gave some examples of how he could do that—he could serve written questions or document requests. Id. It told him that once he'd learned the names of the Doe defendants, he must file a motion to substitute those names for the "Doe" placeholders. Id. The order also advised the defendants that if they believed the plaintiff had failed to exhaust his administrative remedies,

3

they could file a summary judgment motion on that basis by January 29, 2026. Id. The court set a deadline of April 29, 2026 by which the parties must complete discovery. Id. at 1. And it set a deadline of May 29, 2026 for either party to file summary judgment motions based on the substantive allegations in the case. Id. at 2.

On the date the court issued the order, the plaintiff still was incarcerated at Oakhill.[2] On December 29, 2025, the clerk's office received a letter from the plaintiff, advising the court that he'd recently been released and that he now lived on Mayer Avenue in Madison. Dkt. No. 56. The clerk's office updated the plaintiff's address on the docket. At the end of the letter, the plaintiff asked for the court's indulgence "that the scheduling order (Dkt. 55) might be adjusted or extended accordingly . . . ." Id. The plaintiff also "reiterate[d] [his] need for the Court to assist with the recruitment of counsel." Id. The court denied without prejudice the plaintiff's letter request to modify the scheduling order, observing that the deadlines it had set (at least the deadlines for completing discovery and filing merits-based summary judgment motions) remained several months out. Dkt. No. 57. It also denied without prejudice the plaintiff's request to assist him recruit counsel, saying it could not determine whether he was asking the court to appoint him counsel. Id. The court mailed that order to the plaintiff at the address on Mayer Avenue.

---

[2] The Wisconsin Department of Corrections locator website shows that the plaintiff was paroled from Oakhill on December 2, 2025. appsdoc.wi.gov/lop/details/detail (for "Schilling, Ronald S.", DOC #32219).

On January 20, 2026, the clerk's office received another letter from the plaintiff. Dkt. No. 58. This letter was dated January 13, 2026. It explained that the court had given the plaintiff a deadline of January 13, 2026 by which to identify the Doe defendants. Id. It advised that on December 30, 2025—less than three weeks earlier—the plaintiff had served discovery demands on defense counsel and filed them with the court. Id. (The court did not receive those demands, which is a good thing, because parties should not file discovery demands with the court; they should serve them on the opposing party only.) The plaintiff asked that the court issue an "Order of Abeyance" holding "all matters in cessation until such a time as the defendants compl[ied] with discovery and allow[ed] [him] to discern the names of the John Doe defendants as the Court ordered in the Scheduling Order." Id. In the alternative, he asked the court to adjust or extend the scheduling order "accordingly." Id. He did not tell the court how much time he needed or specify a new deadline, but the plaintiff did ask the court to give "additional consideration" to his request for appointment of counsel. Id.

On January 26, 2026, the court granted the plaintiff's request for additional time to identify the Doe defendants. Dkt. No. 59. It set a new deadline of February 23, 2026 for the plaintiff to do so. Id. The court also advised the plaintiff that his last motion for appointment of counsel had been denied by the judge in the Western District; it advised him that if he wanted this court to appoint him counsel, he should file a renewed motion explaining his circumstances. Id.

At the defendants' request, dkt. no. 60, the court also extended the deadline for them to file a motion for summary judgment on exhaustion grounds, dkt. no. 62. The court vacated the January 29, 2026 deadline for the defendants to file that motion and advising that it would set a new deadline after the plaintiff had identified the Doe defendants. Dkt. No. 62.

The February 23, 2026 deadline for the plaintiff to identify the Doe defendants came and went, and the court did not hear anything from him. The court waited another ten days or so, until March 5, 2026; when it still had not received anything from the plaintiff identifying the Doe defendants, the court issued an order dismissing them and setting a deadline of March 20, 2026 for the defendants to file their motion for summary judgment on exhaustion grounds. Dkt. No. 63. The defendants timely filed that motion. Dkt. No. 64. Along with the motion, they provided a certificate of service attesting that on March 20, 2026, they had mailed the motion and supporting documents to the plaintiff at the Mayer Avenue address. Dkt. No. 64-1.

On March 23, 2026, the court issued an order explaining that, among other things, the plaintiff's deadline to respond to the defendants' exhaustion-based summary judgment motion was April 20, 2026. Dkt. No. 69. That order explained what the plaintiff needed to do to respond to the summary judgment motion:

> The plaintiff must respond to each of the State defendants' proposed findings of fact (Dkt. No. 66), either by agreeing with the proposed fact or explaining why he disagrees with the proposed fact. If the plaintiff does not either agree or disagree with a proposed fact, the court will assume that he agrees with that proposed fact. The plaintiff must support every disagreement with a proposed fact by

6

citing to evidence. He can do that by relying on documents that he attaches to his response or by telling the court his version of what happened in an affidavit or an unsworn declaration under 28 U.S.C. §1746. An unsworn declaration is a way for a party to tell his side of the story while declaring to the court that everything in the declaration is true and correct. The plaintiff also must respond to the legal arguments in the defendants' brief (Dkt. No. 65) by explaining why he disagrees with those arguments. If the plaintiff does not file his response in opposition to the State defendants' summary judgment motion by April 20, 2026, the court has the authority to treat the defendants' motion as unopposed, accept all facts asserted by the defendants as undisputed and decide the motion based only on the arguments in the defendants' brief, without any input from the plaintiff. That means that the court likely will grant the defendants' motion. If a plaintiff has a history of failing to file documents by deadlines the court has set, or failing to comply with court orders, the court also has the authority to dismiss the case as a sanction for plaintiff's failure to timely file a response in opposition to the motion for summary judgment.

If the plaintiff does not file his response in opposition to the State defendants' summary judgment motion by April 20, 2026, the court has the authority to treat the defendants' motion as unopposed, accept all facts asserted by the defendants as undisputed and decide the motion based only on the arguments in the defendants' brief, without any input from the plaintiff. That means that the court likely will grant the defendants' motion. If a plaintiff has a history of failing to file documents by deadlines the court has set, or failing to comply with court orders, the court also has the authority to dismiss the case as a sanction for plaintiff's failure to timely file a response in opposition to the motion for summary judgment.

Id. at 1-2. The court also noted that the defendants had filed a motion asking the court to stay discovery until the court could rule on the exhaustion-based summary judgment motion and that the court would grant that motion. Id. at 2-3.

On March 26, 2026, the clerk's office received a letter from the plaintiff. Dkt. No. 75. This letter described physical and mental difficulties the plaintiff had been having. Id. at 1. It alleged that the defendants had provided discovery

7

responses that had been "pragmatically worthless and dilatory in nature." <u>Id.</u> The plaintiff asserted that he had received "an outrageously voluminous batch of documents to pore over," maintaining that his cognitive and physical ailments prevented him from reviewing and comprehending. <u>Id.</u> He asserted that "[n]obody could possibly be expected to litigate under these conditions." <u>Id.</u> The plaintiff told the court that he was enclosing an affidavit of facts and a supporting appendix which "demonstrates the facts, actions and inactions of the defendants and, hopefully, will assist the Court's reasoning in affecting justice and arriving at an amicable solution to this entire case." <u>Id.</u> at 2. The plaintiff went on to describe his severe anxiety, difficulty in negotiating the University of Wisconsin law library and difficulty litigating against "numerous seasoned attorneys representing all of the defendants in this case, whose only intent is to deprive an injured patient rightful compensation." <u>Id.</u> He went into more detail regarding his medical conditions, and said, "In sum, for the sake of my own mental health and well being I need for this case to be concluded. It is taking an enormous toll on every aspect of my life." <u>Id.</u>

The plaintiff said that "[i]n the alternative," he had filed a revised and renewed motion for recruitment of counsel, declaration, brief and affidavit, as the court had suggested. <u>Id.</u> He asserted that judges should not "litigate from the bench, ordering the defendants to file this or that dispositive motion, based upon this or that theory of law." <u>Id.</u> He stated that he had filed his "exhaustion documents" along with his "original summons and complaint," asserting that "[p]roof of the issues were brought up in timely fashion to everyone in the

8

Chain of Command." Id. He said that the "four corners of the case documents were screened at length for any deficiencies, and exhaustion was not cited as being deficient," and he argues that the defendants "effectively waived" their exhaustion arguments by not citing exhaustion as an affirmative defense. Id.

The remainder of this letter contains legal arguments opposing summary judgment. Id. at 2-4. The plaintiff closes by saying,

> Frankly, after all is said and done, I deserve to be fairly compensated for the pain and suffering I've endured at the hands of the defendants, and truly deserve better peace in life for my remaining couple of years. I don't believe I'm asking too much given the facts.

Id. at 4.

The same day the court received this letter, the plaintiff's renewed motion to appoint counsel, dkt. no. 70, brief in support of that motion, dkt. no. 71, affidavit, dkt. no. 72, and "Affidavit of Facts Supporting Authentication of Documentary Evidence," dkt. no. 74, arrived at the clerk's office.

Five days later, on March 31, 2026, the clerk received another letter from the plaintiff. Dkt. No. 76. This letter, dated March 27, 2026, said that the plaintiff had received the court's March 23, 2026 order explaining what he needed to do to respond to the defendants' exhaustion-based summary judgment motion and giving him a deadline for responding to it. Id. He said,

> For the sake of sanity, let me see if I've got this right. First, the defendants refused to comply with meaningful discovery, by not divulging the names of the requested Doe defendants. Then the Court dismisses said Doe defendants because I have no way of identifying them. Then the defendants move the Court to stay discovery proceedings, which the Court quickly grants, and which I am not allowed to respond to. And just today the Court ordered me to respond to the defendants' pleadings which I have not even received. What's the matter with this scenario?

Id.

The plaintiff accused the defendants of "continu[ing] with their nefarious shenanigans, by not sending [him] copies of their pleadings like they're supposed to . . . ." Id. He asked the clerk to send him copies of the defendants' summary judgment motion, brief, proposed findings of fact and motion for a stay; he said he "had no idea what Dkt. 67 might contain." Id. He said, "The defendant's actions are fairly prevenient, and it obviates the need for the Court's assistance." Id. He opined that it was a "sad judicial commentary, but this is the sort of thing defendants do when they don't have an honest case." Id. He also asked the court to "adjust the 032326 Order pursuant to Civil Local Rule 56(b)(2)." Id. Observing that the court had asked for his "responses containing [his] version of the actual facts," he expressed the hope that his "last submission would cover most of that." Id. He asked that if the last submission was "insufficient in some manner," the clerk advise him so that he could make revisions. Id. Finally, he reiterated his physical and cognitive conditions, stating that "nobody should be expected to attempt litigating like this." Id.

On April 20, 2026, the court received from the plaintiff a motion asking the court to extend the deadline for him to file his response to the defendants' summary judgment motion. Dkt. No. 77. He said, "[b]ecause of myriad logistical problems beyond his control, plaintiff cannot meet the above timing." Id. (Presumably he was referring to the fact that April 20, 2026 was the deadline the court had set for him to respond to the exhaustion-based

10

summary judgment motion.) He filed with this letter an affidavit, asserting that he had yet to receive "any of the documents the Court expects him to respond to," that on March 27 he had written the clerk's office asking for copies of those documents, that he had never received them, that he could not respond to documents he has not received, that he has cognitive and physical impairments and that he has done his best and "continues to beg the Court's intervention with the instant motion and his Motion for Recruitment of Counsel." Id. at 1-2. He filed an affidavit in support of this motion. Dkt. No. 78. The affidavit detailed the plaintiff's physical and mental issues.

On May 5, 2026, the court received from the defendants a motion to stay the May 29, 2026 deadline for filing substance-based motions for summary judgment. Dkt. No. 79. On May 6, 2026, the court granted that motion, vacating the May 29, 2026 deadline for all parties. Dkt. No. 80. It stated that it would set new deadlines after it decided the State defendants' pending motion for summary judgment on exhaustion grounds. Id.

On May 28, 2026, the clerk's office received from the plaintiff a notice advising the court that his address had changed. Dkt. No. 81. In this brief, four-paragraph letter, he reminded the clerk of his physical and mental issues. Id. He stated, "given my increasingly dire need, I even more strenuously request the Court's additional consideration of my Motion For Appointment Of Counsel, the Affidavit In Support, and the Brief In Support, with attachments affixed thereto." Id.

11

**II.     The Plaintiff's Motions to Appoint Counsel (Dkt. Nos. 70, 81)**

In his brief in support of his March 2026 motion to appoint counsel, the plaintiff stated that he sent letters to potential lawyers, but that he had been unable to find a lawyer. Dkt. No. 71 at 2. He said that he was "severely limited due to the cognitive disabilities suffered in this matter." Id. The plaintiff stated that due to lack of legal education and proficiency, he could not competently represent himself and probably could not satisfy the required elements of his medical claims to be entitled to compensatory and punitive damages. Id. at 3-4. He stated that friends had helped him with the case, but that they were not obligated to help him and could not appear on his behalf at critical stages of the litigation. Id. at 4. The plaintiff also stated that he recently had been released from prison after fifty-one years of incarceration, and he said that the "toxic stress" associated with release had exacerbated his diminishing eyesight and cognition. Id. He said that assimilating into society had taken a traumatic toll on his mental and physical health, which posed obstacles when trying to effectively litigate the case. Id. at 4-5.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for

12

these cases.'" <u>Henderson v. Ghosh</u>, 755 F.3d 559, 564 (7th Cir. 2014) (quoting <u>Olson v. Morgan</u>, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" <u>Eagan v. Dempsey</u>, 987 F.3d 667, 682 (7th Cir. 2021) (quoting <u>Pruitt v. Mote</u>, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. <u>Watts v. Kidman</u>, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. <u>Pickett v. Chi. Transit Auth.</u>, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." <u>Eagan</u>, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." <u>Eagan</u>, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel."

Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has satisfied the first requirement for appointment of counsel. His filings show that he made a reasonable attempt to find a lawyer on his own. The plaintiff's motions focus on his inability to prove the merits of his claims. The court acknowledges that the plaintiff says he has cognitive issues, but one would not know it from the documents he's filed. His motions, affidavits and other documents are clear and well-written. The plaintiff no longer is incarcerated, so he has resources available to him that he did not have when he was incarcerated. He says that he has received assistance litigating this case, but he does not explain what that assistance was. Did he have lawyers helping him with legal reasoning? Did someone do his typing for him? Did someone else write the motions and letters the court has received

from the plaintiff? Without knowing what kind of help the plaintiff has received, the court cannot conclude that he does not have the ability to explain things on his own.

The court regrets that the plaintiff suffers from physical and mental ailments. But many, many litigants with cases before the court also suffer from such ailments. The court has self-represented incarcerated litigants, self-represented mentally ill litigants, self-represented differently-abled litigants, litigants with severe cognitive deficiencies. Many of these people must figure out how to present their claims, because as both Judge Conley and now this court have explained, there simply are not enough volunteer lawyers to represent every litigant who wants a lawyer. The plaintiff has not demonstrated that he is one of the rare few litigants who is incapable of explaining what happened to him in a way that the court and opposing parties can understand.

Further, on March 31, 2026, the court received from the plaintiff a letter stating that he had not received the State defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 76. The State defendants filed their motion on March 20, 2026, along with a certificate of service which states that on that same date, they mailed the motion and supporting documents to the plaintiff at the address on Mayer Avenue in Madison. Dkt. No. 64-1. It is not clear why the plaintiff would not have received the motion, especially given that the court did not receive the plaintiff's most recent change-of-address notice (to Capital Avenue in Madison) until May 28, 2026—over two months later. That notice was dated May 21, 2026. The plaintiff does not explain when he moved

15

from the Mayer Avenue to the Capital Avenue address, but presumably he notified the court as soon as possible of the move. Nor is it clear why the plaintiff insists that he has not received various other documents filed in the case.

Nonetheless, the court will direct the State defendants to resend their summary judgment motion the plaintiff, and it will extend the deadline for the plaintiff to respond to that motion. The court will deny without prejudice the plaintiff's motions to appoint counsel, which means that he can renew the motions later in the case if he is able to demonstrate to the court that the case has become too complicated for him to handle himself.

### III.    Conclusion

The court **DENIES WITHOUT PREJUDICE** the plaintiff's requests to appoint counsel. Dkt. Nos. 70, 81.

The court **GRANTS** the plaintiff's motion for an extension of time. Dkt. No. 77.

The court **ORDERS** that the State defendants must resend to the plaintiff their motion for summary judgment on exhaustion grounds and supporting materials (Dkt. Nos. 64-67) and notify the court when they do so. They must send the motion to the plaintiff's most recent address 1831 Capital Ave., Madison, WI 53705-1212—the address that now is listed on the court's docket.

The court **ORDERS** that the plaintiff's deadline to respond to the State defendants' motion for summary judgment on exhaustion grounds is

16

**EXTENDED** to thirty days after the State defendants notify the court that they mailed the motion to the plaintiff.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by unrepresented litigants. Entitled "Answers to Pro Se Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 6th day of July, 2026.

BY THE COURT:

_____
HON. PAMELA PEPPER
Chief United States District Judge